# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UPTON'S NATURALS CO.; and THE PLANT BASED FOODS ASSOCIATION, <br><br> Plaintiffs, <br><br> -vs- <br><br> KEVIN STITT, in his official capacity as Oklahoma Governor; and BLAYNE ARTHUR, in her official capacity as Oklahoma Commissioner of Agriculture, <br><br> Defendants. | Case No. CIV-20-938-F |

## ORDER

Before the court is Plaintiffs' Motion for Preliminary Injunction, filed September 16, 2020. Doc. no. 5. Along with the motion, plaintiffs filed a supporting memorandum. Doc. no. 6. Defendants responded in opposition to plaintiffs' papers and plaintiffs replied. Doc. nos. 22 and 23. A hearing on the motion was held on October 28, 2020, at which the parties presented oral argument.[1] Doc. no. 24. After consideration of the parties' submissions and oral arguments, the court makes its determination.

---

[1] Plaintiffs' memorandum attached declarations of two individuals, Daniel Staackmann and Michele Simon. Prior to the hearing, the parties stipulated, for purposes of the hearing on the present motion, to the facts set forth in those declarations. No additional evidence was presented by the parties.

I.

Plaintiffs Upton's Naturals Co. and Plant Based Foods Association[2] commenced this 42 U.S.C. § 1983 action seeking declaratory and injunctive relief against defendants, Kevin Stitt and Blayne Arthur, in their respective official capacities as Governor and Commissioner of Agriculture for the State of Oklahoma. Plaintiffs posit that the Oklahoma Meat Consumer Protection Act ("Act"), specifically, 2 O.S. § 5-107(C)(1),[3] which became effective on November 1, 2020, violates the First and Fourteenth Amendments to the United States Constitution.

By way of example of the matters at issue, Upton's desires to sell, unencumbered by the requirements of the statute in question, a product it calls "Ch'eesy Bacon Mac" even though the product contains no bacon (or, for that matter, cheese):

---

[2] Plaintiff Upton's Naturals Co. is an Illinois corporation, located in Chicago, which sells plant-based foods nationwide, including Oklahoma. Plaintiff Plant Based Foods Association is a trade association representing plant-based sellers and is a California non-profit corporation. The association has over 170 members, including food manufacturers, ingredient suppliers, restaurants, and distributors. A substantial majority of the members sell plant-based foods in Oklahoma.

[3] Section 5-107(C)(1) prohibits a person "advertising, offering for sale or selling meat" from engaging in any "misleading or deceptive practices," including "misrepresenting a product as meat that is not derived from harvested production livestock," but provides "product packaging for plant-based items shall not be considered in violation of this paragraph so long as the packaging displays that the product is derived from plant-based sources in type that is *uniform in size and prominence to the name of the product*." 2 O.S. § 5-107(C)(1) (emphasis added). A 2019 predecessor to the Act required a plant-based seller's "product packaging" to "display[] that the product is derived from plant[-]based sources." It did not require the display to be in type that is uniform in size and prominence to the name of the product. 63 O.S. § 317(7) (2019). Plaintiffs had no problems complying with that law.



Plaintiffs' complaint is that the Act prohibits sellers of plant-based foods from using meat terms to describe their foods unless they have a disclaimer—in the same "size and prominence" as their product names—that their products are plant-based. Plaintiffs state that their food labels use meat terms including, but not limited to, "burger," "bacon," "chorizo, "hot dog," "jerky," "meatballs" and "steaks," to describe their foods. Additionally, they state that their food labels clearly mark their foods as "meatless," "plant-based" or "vegan" or with a similar term to let the consumer know their foods do not contain meat. However, plaintiffs state that these terms are not the same "size and prominence" as the product names which include the meat terms. Plaintiffs contend that in order to comply with the Act, they will have to re-design their labels or create special labels for Oklahoma, which will cause them to incur extra costs, or they will have to stop advertising and selling their

3

products in Oklahoma.[4] According to plaintiffs, Upton's Naturals Co. and other members of Plant Based Foods Association will have to choose the latter. Plaintiffs argue that the Act abridges their freedom of speech because they are prohibited from communicating the name of their meatless product–such as "Classic Burger–in their preferred format, with the most prominent textual feature of the label being the one that most pointedly suggests that it has real meat content.

Plaintiffs now move, pursuant to Rule 65(a), Fed. R. Civ. P., for a preliminary injunction to enjoin defendants from enforcing the Act during the pendency of this litigation. They seek to preserve the status quo—no plant-based disclaimer in "type that is uniform in size and prominence" to product name—until the merits of their claims are resolved.

To obtain a preliminary injunction, plaintiffs must satisfy four requirements: (1) likelihood of success on the merits; (2) irreparable harm; (3) balance of equities; and (4) benefit to the public. Verlo v. Martinez, 820 F.3d 1113, 1126 (10th Cir. 2016). Upon review and as discussed below, the court finds that plaintiffs cannot satisfy the first requirement—likelihood of success on the merits. Consequently, the court finds that it need not address the other three requirements. The court concludes that plaintiffs' motion should be denied.

II.

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits laws that abridge the freedom of speech." National Institute of Family and Life Advocates v. Becerra, 138 S.Ct. 2361, 2371 (2018) ("NIFLA"). While the First Amendment's protection is broad, the Supreme Court has recognized

---

[4] Penalties for violation of the Act include the assessment of an administrative penalty of not less than $100.00 and not more than $10,000.00 for each violation. 2 O.S. § 2-18(A). A violation of the Act also constitutes a misdemeanor, which is punishable by imprisonment not exceeding one year. 2 O.S. § 2-18(C); 21 O.S. § 10.

that it has "applied a lower level of scrutiny to laws that compel disclosures in certain contexts," including cases analyzing the disclosure of "factual, noncontroversial information in . . . 'commercial speech.'" *Id.* at 2372.

The parties agree that the Act regulates commercial speech and compels the disclosure of information. The parties disagree as to the level of scrutiny the court should apply in deciding whether the Act violates the First Amendment. Plaintiffs urge the court to apply the intermediate level of scrutiny laid out in Central Hudson Gas & Electric Corp. v. Public Service Commission, 447 U.S. 557, 566 (1980),[5] while defendants urge the court to apply the lower level of scrutiny set forth in Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 651 (1985).

Under Central Hudson, the government may restrict commercial speech that is neither misleading nor related to unlawful activity, as long as the governmental interest in restricting the speech is substantial. 477 U.S. at 564. The law at issue must "directly advance[] the governmental interest asserted" and must not be "more extensive than is necessary to serve that interest." 447 U.S. at 566.

Under Zauderer, the government may require commercial speakers to divulge "purely factual and uncontroversial information" about their products or services, so long as it is "reasonably related" to a substantial government interest and is neither "unjustified [n]or unduly burdensome." 471 U.S. at 651. In the context of

---

[5] Plaintiffs additionally urge the court to apply a higher level of scrutiny—strict scrutiny—in analyzing the Act, arguing that its disclosure requirement is a content-based regulation. The court finds the strict scrutiny test does not apply under the circumstances of this case. The government is not "alte[ring] the *content* of [plaintiffs'] speech." NIFLA, 138 S.Ct. at 2371. Plaintiffs want to convey on food labels that their foods are plant-based. They do not want to convey the information in the same type size and prominence as their product names. At the preliminary injunction hearing, plaintiffs acknowledged they could not cite a case in which strict scrutiny was applied to strike down a law that required disclosure of information a party actually desired to convey.

disclosures, a commercial speaker's "constitutionally protected interest in *not* providing any particular factual information in [its] advertising is minimal." *Id*. (emphasis in original). This is consistent with some bedrock principles of economic regulation, going back at least to the New Deal era, standing for the proposition that a requirement of simple disclosure of accurate information is much less susceptible to judicial intrusion than is substantive regulation.

Despite plaintiffs' arguments to the contrary, the court concludes that the lower level of scrutiny set forth in Zauderer should apply. The challenged provision of the Act does not restrict speech as in Central Hudson. It requires disclosure of information. (And the required disclosure is of information plaintiffs proclaim as a positive selling point for their products.) In addition, the court concludes that the Zauderer standard is not limited to inherently misleading speech. Courts have also held that it applies where the targeted speech is potentially misleading. *See*, Public Citizen Inc. v. Louisiana Attorney Disciplinary Bd., 632 F.3d 212, 218 (5th Cir. 2011) ("A regulation that imposes a disclosure obligation on a potentially misleading form of advertising will survive First Amendment review if the required disclosure is 'reasonably related to the State's interest in preventing deception of consumers.'"); International Dairy Foods Ass'n v. Boggs, 622 F.3d 628, 641 (6th Cir. 2010) ("*Milavetz*[6] thus established that *Zauderer* applies where a disclosure requirement targets speech that is *inherently* misleading. We conclude that *Zauderer* also controls our analysis where, as here, the speech at issue is *potentially* misleading.") (emphasis in original). [7] The court has no trouble finding that the

---

[6] Milavetz, Gallop & Milavetz, P.A. v. U.S., 559 U.S. 229 (2010).

[7] The court additionally notes that courts have applied Zauderer beyond disclosures intended to remedy inherently or potentially misleading speech. *See*, *e.g.*, American Meat Institute v. U.S. Dept. of Agriculture, 760 F.3d 18, 22 (D.C. Cir. 2014) (en banc); National Electrical Manufacturers Association v. Sorrell, 272 F.3d 104, 115 (2d Cir. 2001).

6

speech at issue is potentially misleading.[8]  Product packaging which labels a product as "Classic Burger," bacon, chorizo, hot dog, jerky, meatballs, or steak, when the product is actually a plant-based product, is potentially misleading to a reasonable consumer.  While plaintiffs argue that the government cannot make these meat-related terms potentially misleading by virtue of its definition of meat,[9] the court notes that all of the meat-related terms, except burger, are also defined in the Dictionary by Merriam-Webster, www.merriam-webster.com, to indicate they are animal-based.  With respect to burger, however, plaintiff Upton's Naturals Co. specifically refers to its product as "Classic Burger," thereby indicating a traditional food made of beef.  Although plaintiffs contend that defendants have failed to demonstrate with evidence that the speech is misleading, the court concludes that the government need not "conduct a survey of the . . . public before it [may] determine that the [advertisement] had a tendency to mislead" where "the possibility of deception is . . . self-evident."  Zauderer, 471 U.S. at 652-653.  The court is satisfied that the possibility of deception flowing from the use of meat-related terms

---

[8] The court also opines that the speech at issue is "is *inherently likely* to deceive" a reasonable consumer. Milavetz, 559 U.S. at 257 (J. Thomas, concurring) (emphasis in original).  By its nature, packaging that labels a product as "Classic Burger," bacon, chorizo, hot dog, jerky, meatballs, or steak, when it is actually a plant-based product, is inherently likely to deceive a reasonable consumer.  A reasonable consumer, in the court's view, would not readily understand that the product is derived from plant-based sources upon viewing the product name.  Although the court in Turtle Island Foods SPC v. Soman, 424 F. Supp.3d 552, 573-574 (2019), found differently, the court respectfully disagrees.  Further, the court notes that in Turtle Island Foods SPC, the court's understanding was based upon the fact that the "labels also ma[d]e disclosures to inform consumers as to the plant-based nature of the products contained therein." Id. at 574.  Plaintiffs also argue that their packaging makes disclosure to inform consumers as to the plant-based nature of their products.  However, as discussed, the packaging presented by plaintiffs relating to Upton's Naturals Co.'s products, using the term "VEGAN" or the term "100% VEGAN" does not, in the court's view, make the packaging non-misleading when the product labels–with their explicit and prominent use of terms associated with real meat–are viewed as a whole.

[9] The Act prohibits misrepresentation of a product as "meat that is not derived from harvested production livestock."  "Livestock" is defined as "animals" and "meat" is defined as "any edible portion of livestock."  2 O.S. § 5-107(C)(1) and 2 O.S. §§ 507(B)(1) and (B)(2).

7

for the plant-based products is self-evident from the natural inference a consumer would draw from the meat-related terms used. (This is true whether we assume that the "reasonable consumer" through whose eyes we look at the labels in question is a hurried grocery shopper, or a shopper who might take the time to closely scrutinize a label before deciding which product to grab. That said, it is, to the undersigned, worthy of note–and unexceptionable to assume–that many shoppers just don't have the time, or perhaps even the inclination, to study product labels in more detail than may seem to be required to form an impression as to the essential nature of the product inside the package.) Further, the court opines the likelihood of deception "is hardly a speculative one." Milavetz, 559 U.S. at 251.

Plaintiffs suggest that their product packaging is not potentially misleading because it features terms, such as meatless, vegan, or plant-based, on the front label. The only packaging in the record before the court is the packaging of some of Upton's Naturals Co. foods. Upon review of the packaging submitted, the court opines that the product packaging for "Ch'eesy Bacon Mac," "The Classic Burger," "Updog," and "Jerky Bites," even with the use of the "VEGAN" term or the "100% VEGAN" term, remains potentially misleading to the reasonable consumer. The terms do not provide, in the court's view, sufficient information for the reasonable consumer to conclude that the product is plant-based rather than animal-based. The court concludes that the "VEGAN" or "100% VEGAN" term does not make the packaging non-misleading. Consequently, the court will apply the Zauderer level of scrutiny to analyze the Act.[10]

---

[10] The court is unimpressed with plaintiffs' protestations that the legislation in question was enacted "at the meat lobby's request," and is the product of the sway of "powerful interest groups." Doc. no. 6, at 1, 7. Wins and losses in the halls of the legislature are inherent in the legislative process, especially where the legislation concerns regulation of commercial activity. This brings to mind the Tenth Circuit's decision in Powers v. Harris, 379 F.3d 1208 (10th Cir. 2004), which

The Zauderer test includes several inquiries: (1) whether the disclosure is factual; (2) whether it is noncontroversial; (3) whether it is reasonably related to the state's interest in preventing deception of consumers; and (4) whether it is unjustified or unduly burdensome. Zauderer, 471 U.S. at 651. There is no argument that the information required to be disclosed by plant-based sellers is not factual or is controversial. Indeed, the required disclosure entails only an accurate statement that the plant-based products are derived from plant-based sources.

Defendant has the burden of proving that the disclosure requirement is neither unjustified nor unduly burdensome. Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation, 512 U.S. 136, 146 (1994). Upon review, the court is satisfied that defendants have carried their burden. The size and prominence requirement is justified and not unduly burdensome. That requirement is intended to ensure that a reasonable consumer will not be misled by the product name, which uses an animal-based term when the product itself is plant-based.[11] The disclosure requirement seeks to inform the grocery shopper about the nature of the product purchased. In addition, the disclosure requirement does not hinder plaintiffs' ability to

---

involved–albeit in a somewhat different legal context–a piece of special interest legislation that was vastly more protective of a special interest than the legislation challenged in this case. In Powers, the plaintiffs complained, accurately, that the Oklahoma law in question was "a classic piece of special interest legislation designed to extract monopoly rents from consumers' pockets and funnel them into the coffers of a small but politically influential group of business people." Id. at 1218. The Court of Appeals was unmoved by what it called the economic protectionism argument. And, more generally, the court observed that "[a]s a creature of politics, the definition of the public good changes with the political winds," and that this admonition was especially true "when we are reviewing the regulatory actions of states, who, in our federal system, merit great respect as separate sovereigns." Id.

[11] At the hearing, the defendants stated that the use of the word "vegan" in the required size of type would satisfy the requirements of the statute and would adequately import the non-meat nature of the food. Consequently, the court proceeds on that basis even though it seems quite possible that the use of the word "vegan" would have *the desired effect* on shoppers specifically interested in meatless products while tending to avoid *the undesired effect* of turning away shoppers, unversed in the vocabulary of veganism, who are interested in meat products.

communicate effectively. The information to be conveyed is not scripted by the government. Plaintiffs can use any words they choose to convey their foods are derived from plant-based sources. No specific font or font size is mandated. All that is required is that the disclosure of information be in uniform in a size and prominence to the product name. The disclosure requirement is not such that it "effectively rules out" plaintiffs' ability to include the information they want to convey on their product labels. Ibanez, 512 U.S. at 146. The side-by-side illustration of Upton's Naturals Co.'s "Ch'eesy Bacon Mac" product in defendants' response, doc. no. 22, p. 22, demonstrates that the Act does not crowd out plaintiff's speech.[12]

Lastly, the court finds that the disclosure requirement is reasonably related to the state's interest in preventing confusion or deception of consumers. The Act aims to prevent consumer confusion or deception about plant-based foods labeled with product names using animal-based terms. *See*, United States v. Wenger, 427 F.3d 840, 850 (10th Cir. 2005) ("It is undisputed that the government has an interest in protecting consumers from being misled."). Requiring the disclosure of the plant-based nature of the product to be the same size and have the prominence as the product name is reasonably related to the state's interest of ensuring accurate commercial information on food labels. *See*, *e.g.*, Spirit Airlines, Inc. v. U.S. Dept. of Transp., 687 F.3d 403, 415 (D.C. Cir. 2012) (rule requiring final price to be the

---

[12] In their papers, plaintiffs, quoting from NIFLA, 138 S.Ct. at 2377, argue that defendants have not met their burden of demonstrating that the disclosure requirement is not unduly burdensome because they have not shown that it remedies a harm that is "potentially real not purely hypothetical" or that it extends no "broader than reasonably necessary." However, the court finds that defendants have demonstrated justification for the disclosure that is more than "purely hypothetical." As previously discussed, the speech to be remedied by the Act is self-evidently potentially misleading and the state has interest in preventing consumer confusion or deception. The court also concludes that defendants have shown that the disclosure requirement is no broader than reasonably necessary. The disclosure requirement is similar to one used by federal law relating to imitation foods. *See*, *e.g.*, 21 U.S.C. § 343(c). It is also the standard phrase used in the Oklahoma Agriculture Code relating to imitation foods. *See*, 2 O.S. § 6-182(k)(3); 2 O.S. § 6-280.3 (13)(c); 2 O.S. § 6-290.3(13)(c).

most prominently listed figure was reasonably related to government's interest in preventing deception of consumers); International Dairy Foods Ass'n, 622 F.3d at 643 (font, style, case and color requirements for the disclosure's text reasonably related to government's interest in preventing consumer deception).

III.

Based upon the foregoing, Plaintiffs' Motion for Preliminary Injunction, filed September 16, 2020 (doc. no. 5), is **DENIED**.

IT IS SO ORDERED this 19th day of November, 2020.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

20-0938p006.docx